UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| KELLI J. BROWN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>WAL-MART STORES, INC., et al., )<br>)<br>Defendants. ) | Civil No. 05-78-B-W |

**ORDER ON DEFENDANT WAL-MART STORES, INC.'S
MOTION *IN LIMINE* TO EXCLUDE EXPERT TESTIMONY**

Because the opinions of Plaintiff's expert fail to satisfy the requirements of Federal Rule of Evidence 702 as interpreted in the *Daubert* trilogy, this Court GRANTS Defendant's motion *in limine* to exclude his testimony.

**I.  Facts and Procedural History**

**A.  The Law Suit**

On December 13, 2003, Plaintiff Kelli Brown was injured when she was hit by falling merchandise while walking down an aisle in Wal-Mart's Palmyra, Maine store. On May 6, 2005, Ms. Brown filed suit alleging negligence against Wal-Mart Stores, Inc.[1] in Maine Superior Court, Penobscot County.  Pursuant to 28 U.S.C. §§ 1332 and 1441, the Defendants removed the action to this Court on May 19, 2005.  On May 23, 2005, this Court issued a Scheduling Order, which required the plaintiff to "designate experts required to be disclosed by Fed. R. Civ. P. 26(a)(2)(A) . . . and . . . provide a complete statement of all opinions to be expressed and the basis and reasons therefore by:  August 9, 2005." *Scheduling Order*, at 1-2 (Docket # 3).

---

[1] Also named as defendants were Wal-Mart Stores East, Inc., Wal-Mart Stores East, LP, Wal-Mart Associates, Inc., and Wal-Mart Realty Co.

### B. The Expert Designation

By letter dated September 8, 2005,[2] Ms. Brown provided Wal-Mart with a report entitled "Preliminary Accident Investigation Report" from David Dodge, an engineer. Mr. Dodge's report reads in pertinent part:

> The Matchbox trucks that fell and struck Ms. Brown were, at the time of her accident, improperly stored and displayed in that they were not stacked in a stable enough manner to withstand the foreseeable event of someone bumping the display shelving.
> It is well to understand at this point that the display shelving is free standing in that it is fastened only to the floor and to no other structural building components.  Therefore, the shelving is free to sway when a horizontal force is exerted on it and the amount of sway increases with the height of the shelving.
> Mercantile stores such as Wal-Mart are designed with little warehouse storage space, therefore, overstock items that were, in the past, stored in a warehouse area that was not open to the public now must be stored in customer shopping areas.  As a result customer display shelves have become taller and fuller, and the items stored on them are stacked higher.  Photographs # 1 and # 2 show the top and next-to-top customer display shelves (the shelves which will sway the most when the display unit is bumped) at the time of Ms. Brown's accident.  As may be clearly seen some boxes are stored five high and, when the bottom portion of the display shelving is moved, the movement at the top shelf is exaggerated.  The first movement may only move the top box slightly, however, subsequent movements, by sales-associate or customer interaction with the shelving may serve to dislodge the boxes making them fall.  Sales-associate and customer bumping of the shelving unit is entirely foreseeable, thus, if the shelving unit is not completely immovable, the unit and its displayed items will move.  If the displayed boxes move, it then becomes predictable that they may, eventually, fall and strike a customer or employee.
> Wal-Mart Stores, Inc. has issued guidelines which address the foreseeable event of shelving unit movement and display item dislodging.  Exhibit # 2 states that items stored on a riser (top shelf) must be stable and less than 24 inches high, and that a "bump" test "should" be used to test for stability.  The bump test should duplicate the foreseeable activities of sales associates and customers.  Exhibit # 3 states that the stacker should "be careful with merchandise stored on risers," and that snap rails can be used to prevent items from falling.  It also suggests to ask "what will happen if it is bumped?"  Exhibit # 4 indicates that the riser should be ". . .

---

[2] Although dated after this Court's deadline for the designation of Plaintiff's expert, the Defendant makes no issue of the apparently late designation.

eliminated whenever possible." Exhibit # 5 shows items stored on a riser which are held in place by a snap rail which is the white horizontal bar that is mounted in front of the displayed boxes for purpose of holding the boxes in place.

It is evident that Wal-Mart Stores, Inc. realizes that falling merchandise from the top shelves of display shelving units is a potential safety hazard. One must then look at the circumstances surrounding Ms. Brown's accident. Photographs # 1 and # 2 show top shelving units with no snap rails, boxes are stored what appears to be higher than 24 inches, and if one asked himself or herself "what will happen if it is bumped?" the answer should be that it may fall, especially if bumped several times during its lifetime. Finally, the ultimate bump test was performed at the time of Ms. Brown's accident when either a sales associate or a customer bumped the shelving and the stacking method failed. The improper, unsafe stacking method of the Matchbox toys that fell and struck Ms. Brown, was the direct cause of her accident.

### C.  The Motion *in Limine*

On October 31, 2005, Defendant Wal-Mart Stores, Inc. ("Wal-Mart"), filed a motion *in limine* to exclude Mr. Dodge's expert testimony on the following grounds: (1) Mr. Dodge considered unreliable facts and data in formulating his opinions; (2) Mr. Dodge failed to articulate a reliable methodology in arriving at his conclusions, as required by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny; and, (3) Mr. Dodge's opinions are not relevant under *Daubert*'s heightened standard of relevancy as explained by the First Circuit in *Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77 (1st Cir. 1998).

### II.    Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the

3

product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.[3]

FED. R. EVID. 702. In *Daubert*, the United States Supreme Court held Rule 702 imposes a gate-keeping role on the trial judge to ensure "an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-49 (1997) (*Daubert* applies to technical and other specialized expert testimony).[4] The relaxation of the "usual requirement of firsthand knowledge or observation" is premised on "an assumption that the expert's opinion will have a reliable basis in knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592.

In examining whether to admit an expert's testimony, a court should consider: (1) whether the theory or technique can be or has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential error rate; and, (4) the level of the theory or technique's acceptance within the relevant discipline. *Id.* at 593-94. These factors are not definitive or exhaustive, and the trial judge enjoys broad latitude to use other factors to evaluate reliability. *United States v. Mooney*, 315 F.3d 54, 61 (1st Cir. 2002) (citing *Kumho Tire Co.*, 526 U.S. at 153). The trial judge may determine which of the *Daubert* factors to apply depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony. *Kumho Tire Co.*, 526 U.S. at 150. "Regardless of what factors are evaluated, the main inquiry is

---

[3] Rule 702 was amended in 2000 to reflect the holdings in *Daubert* and *Kumho Tire Co*. FED. R. EVID. 702 advisory committee's note.

[4] *Daubert* and *Kumho Tire Co.*, together with *General Electric Co. v. Joiner*, 522 U.S. 136 (1997) (trial court's decision to admit or exclude expert testimony will be reversed only for abuse of discretion), have become known as the *Daubert* trilogy. *See* MANUAL FOR COMPLEX LITIGATION, FOURTH, § 23.2 (2004 ed.). Wal-Mart makes no issue of the first *Daubert* inquiry: whether the witness is in fact an expert. *See* FED. R. EVID. 104(a) ("Preliminary questions concerning the qualifications of a person to be a witness . . . .").

4

whether the proffered expert's testimony is sufficiently reliable." *First Union Nat. Bank v. Benham*, 423 F.3d 855, 861 (8th Cir. 2005) (citing *Unrein v. Timesavers, Inc.*, 394 F.3d 1008, 1011 (8th Cir. 2005) ("There is no single requirement for admissibility as long as the proffer indicates that the expert evidence is reliable and relevant.").

Experts may testify on the basis of experience. *See* FED. R. EVID. 702 advisory committee's note (noting that "experience alone – or experience in conjunction with other knowledge, skill, training or education" may provide "a sufficient foundation for expert testimony."); *Kumho Tire Co.,* 526 U.S. at 156 (stating that "no one denies that an expert might draw a conclusion from a set of observations based on extensive and specialized experience."). However, "[i]f the [expert] witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." FED. R. EVID. 702 advisory committee's note. The gate-keeping function of the trial court requires more than merely "taking the expert's word for it." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough.").

*Daubert* does not require "the party who proffers the expert testimony carry the burden of proving to the judge that the expert's assessment of the situation was correct." *Mooney*, 315 F.3d at 63 (quoting *Ruiz-Troche*, 161 F.3d at 85). Once a trial judge determines the reliability of the expert's methodology and the validity of his reasoning, the expert should be permitted to testify as to inferences and conclusions he draws from it

5

and any flaws in his opinion may be exposed through cross-examination or competing expert testimony. *Id.*

### III. Discussion

#### A. Foundation

The Defendant attacks the facts Mr. Dodge relied on to form his conclusions. Specifically, the Defendant argues that (1) Mr. Dodge used unreliable photographs; (2) Mr. Dodge failed to describe any testing he conducted or observations he made at the scene; (3) Mr. Dodge failed to explain allegedly inconsistent statements in the Preliminary Accident Investigation Report; and, (4) Wal-Mart's merchandise-stacking guidelines failed to establish causation. *Def. Wal-Mart Stores, Inc.'s Mot. In Limine to Exclude Test. of David Dodge with Inc. Mem. of Law*, at 3-5 (Docket # 5).

The Defendant's *in limine* assault on the factual basis underlying Mr. Dodge's conclusions is misplaced. "As a general rule, the factual basis of an expert opinion goes to the credibility of the testimony, not the admissibility, and it is up to the opposing party to examine the factual basis for the opinion in cross-examination." *Larson v. Kempker*, 414 F.3d 936, 941 (8th Cir. 2005) (quotations and citations omitted); *see also Brown v. Wal-Mart Stores, Inc.*, No. 98-5965, 1999 WL 1111514, at *3 (6th Cir. Nov. 24, 1999) (per curiam) (unpublished opinion) ("[W]here . . . opposing counsel [has] the opportunity to cross-examine an expert witness as to a factual basis, exclusion of the testimony is generally inappropriate."); *Hose v. Chicago Nw. Transp. Co.*, 70 F.3d 968, 974 (8th Cir. 1995); *Loudermill v. Dow Chem. Co.*, 863 F.2d 566, 570 (8th Cir. 1988); *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988); *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 422 (5th Cir. 1987) ("As a general rule, questions relating to the bases and

sources of an expert's opinion affect the weight to be assigned that opinion rather than its admissibility and should be left for the jury's consideration."); *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir. 1985); *Twin City Plaza, Inc. v. Cent. Sur. & Ins. Corp.*, 409 F.2d 1195, 1203 (8th Cir. 1969).  "It is only if an expert's opinion is so fundamentally unsupported that it can offer no assistance to the jury must such testimony be excluded" on foundational grounds.  *Larson*, 414 F.3d at 941 (quotations and citation omitted); *see also Loudermill*, 863 F.2d at 570; *Viterbo*, 826 F.2d at 422.  Rather than exclude Mr. Dodge's testimony on foundational grounds, this Court would instead allow Defendant to challenge the persuasiveness of his opinions through cross-examination. *See Larson*, 414 F.3d at 941; *Brown*, 1999 WL 1111514, at *3; *Hose*, 70 F.3d at 974; *Loudermill*, 863 F.2d at 570; *0.161 Acres of Land*, 837 F.2d at 1040; *Viterbo*, 826 F.2d at 422.

### B. Scientific Methodology

*Daubert* and Rule 702 mandate the expert testimony be the "product of reliable principles and methods."  FED. R. EVID. 702; *Ruiz-Troche*, 161 F.3d at 81 ("[M]ethodology remains the central focus of a *Daubert* inquiry").  The Defendant asserts that Mr. Dodge's opinions are grounded on critical omissions; that he failed (1) to explain how he concluded that the shelves were "free standing" and how this fact related to his conclusions that the display shelving was "free to sway when a horizontal force is exerted on it" and that "the amount of sway increases with the height of the shelving"; (2) to admit that his conclusions were based on photographs that did not depict the accident scene; (3) to describe a methodology for his contention that "when the bottom portion of the display shelving is moved, the movement of the top shelf is exaggerated"; (4) to

7

explain why an initial movement of the bottom portion of a display shelf may only slightly move the upper-most box of merchandise on the top portion of a display shelf, but subsequent movements may dislodge the box causing it to fall; (5) to offer an opinion based on his discussion of the Defendant's guidelines regarding the stacking of merchandise on shelves; and, (6) to support his assertion that the Defendant did not perform a recommended "bump test" with concrete facts.  *Def. Wal-Mart Stores, Inc.'s Mot. In Limine to Exclude Test. of David Dodge with Inc. Mem. of Law*, at 5-9 (Docket # 5).

This Court concludes that the Plaintiff's expert designation is fatally deficient. Mr. Dodge's opinions merely place an expert sheen on common sense.  Mr. Dodge arrives at conclusions as old as humanity itself:  (1) if something is bumped, objects may fall; and, (2) the more bumped, the more likely.[5]  The first sentence of Mr. Dodge's report is his recitation of the allegations in the Complaint.  The second paragraph states that, when force is applied, an object fixed only to the ground will sway, an observation as old as trees.  The third paragraph discusses how retail stores like Wal-Mart store their merchandise, speculates on what may have happened here to cause the box to become dislodged, and reaffirms the predictability of such an occurrence.  The fourth paragraph repeats Wal-Mart guidelines for storage and the fifth paragraph attributes responsibility to Wal-Mart because the accident took place.  *Dodge Report* at 4 ("Finally, the ultimate bump test was performed at the time of Ms. Brown's accident . . . ."); *see Haley v. Wal-Mart Stores, Inc.,* No. 99-168-B, 2000 WL 762244, at * 3 ( Dist. Me. Mar. 13, 2000) (unpublished opinion) ("The mere fact that an accident happened or an injury occurred,

---

[5] The Bible does not say whether Eve got the apple by shaking a branch, but surely, this particular cause and effect must have been discovered rather early on in the course of human history.

by itself, does not permit one to draw any inference that the accident or injury was caused by negligence or by anyone's fault."); *Rice v. Sebasticook Valley Hosp.,* 487 A.2d 639, 641 (Me. 1985); *Deojay v. Lyford,* 139 Me. 234, 237, 29 A.2d 111, 113 (1942).

The nearest Mr. Dodge comes to expressing an expert opinion is when he refers to snap rails. But, his reference to snap rails is only in passing and he offers no expert analysis of what a snap rail is, what forces it will withstand, and whether a snap rail would have prevented the accident. There are no calculations of the weight and size of the Matchbox truck box, the weight and size of the shelving, the nature and strength of the shelf's attachment to the floor, the number of boxes on the shelf at the time of the incident, the precise result of force on a loaded shelf, the degree to which different forces would cause the shelving to move – either at the bottom or top of the shelving, or the trajectory of the box with and without a snap rail.[6] Mr. Dodge's opinion is precisely the type of *ipse dixit* expert testimony the *Daubert* trilogy intended to eliminate. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (stating that "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert"); *Daubert*, 43 F.3d at 1319 (excluding expert testimony where plaintiffs "neither explain[ed] the methodology the experts followed to reach their conclusions nor point[ed] to any external source to validate that methodology"). In sum, Mr. Dodge failed to offer an opinion even remotely

---

[6] Mr. Dodge's opinion also fails the First Circuit's relevancy test, which as explained in *Ruiz-Troche,* imposes a "special relevancy requirement" for the admission of expert testimony. 161 F.3d at 81. The testimony must not only be relevant under Rule 402, but also in the "incremental sense that the expert's proposed opinion, if admitted, likely would assist the trier of fact to understand or determine a fact in issue. In other words, Rule 702, as visualized through the *Daubert* prism, 'requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility.'" *Id.* (quoting *Daubert*, 509 U.S. at 592). The Plaintiff has failed to demonstrate that Mr. Dodge's opinions are scientifically reliable and this failure also makes those opinions irrelevant, because they would not "assist a trier of fact to understand or determine a fact in issue." *Id.*

9

helpful to a fact finder, he did not disclose any scientific methodology used to arrive at his conclusions, and even if his conclusions were based solely or primarily on personal experience, he did not explain how his "experience le[d] to the conclusion[s] reached, why that experience [was] a sufficient basis for the opinion, and how that experience [was] reliably applied to the facts." FED. R. EVID. 702 advisory committee's note.

## IV. Conclusion

This Court GRANTS Defendant's Motion *in Limine* to exclude the testimony of Plaintiff's expert witness, David Dodge.

SO ORDERED.

/s/ John A. Woodcock, Jr.<br>
JOHN A. WOODCOCK, JR.<br>
UNITED STATES DISTRICT JUDGE

Dated this 5th day of December, 2005